IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

TAUREAN JOSHUA

**12 CV** NO. **5484**

INDEX NO.

PLAINTIFF,

-versus-

THE CITY OF NEW YORK, a municipal entity,
NEW YORK CITY POLICE OFFICERS
"JOHN DOES 1-9,"
NEW YORK CITY POLICE OFFICER BERGENLEAH,
NEW YORK CITY POLICE OFFICER DONATO,
NEW YORK CITY POLICE OFFICER DONNELLY,
NEW YORK CITY POLICE OFFICER BRACCONERI,

COMPLAINT
[JURY TRIAL
DEMANDED]

JUDGE CARTER

DEFENDANTS.

---

1. Plaintiff TAUREAN JOSHUA, by his attorneys, STECKLOW, COHEN AND THOMPSON, complaining of the defendants, respectfully allege as follows:

## PRELMINARY STATEMENT

2. Plaintiff TAUREAN JOSHUA brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

3. On Saturday, March 26, 2011 at or around 8:00 PM, Plaintiff TAUREAN JOSHUA and his pregnant fiancée were returning home from a gathering of high school friends at a home located near Cameron Place and Morris Avenue. Shortly after entering their legally parked car and briefly waiting for their car to warm up in the cold night's air, a marked police van pulled up to Plaintiff TAUREAN JOSHUA'S car, and a Defendant "John Doe" POLICE OFFICER began making persistent inquires, from inside the vehicle, to Plaintiff TAUREAN JOSHUA and his pregnant fiancée, who were exhibiting no suspicious behavior or engaging in any illegal acts.

4. Plaintiff TAUREAN JOSHUA inquired as to why the Defendant "John Doe" POLICE OFFICER was asking so many questions, and Defendant NEW YORK CITY POLICE OFFICERS *DONATO*, DONNELLY, and BRACCONERI exited their vehicle in an aggressive and angry manner. DEFENDANT NEW YORK CITY POLICE OFFICER DONATO opened Plaintiff TAUREAN JOSHUA'S driver side door, and the same Defendant POLICE OFFICER grabbed Plaintiff TAUREAN JOSHUA'S arm and pulled

1

him out of the car despite the fact that Plaintiff TAUREAN JOSHUA was not engaged in any unlawful activity, was not in possession of any contraband or weapons, and did not have any outstanding warrants.

5. After pulling Plaintiff TAUREAN JOSHUA out of the car, DEFENDANT NEW YORK CITY POLICE OFFICER DONATO then slammed Plaintiff TAUREAN JOSHUA against the hood of the car, attempted to slam Plaintiff TAUREAN JOSHUA into a nearby jagged tree, and then one or more of the remaining Defendant POLICE OFFICERS held Plaintiff TAUREAN JOSHUA'S arms back while the Defendant POLICE OFFICERS proceeded to brutalize Plaintiff TAUREAN JOSHUA, with Plaintiff TAUREAN JOSHUA putting up no resistance. Upon his restraint, one or more Defendant POLICE OFFICERS placed Plaintiff TAUREAN JOSHUA under arrest, prevented Plaintiff TAUREAN JOSHUA from checking on his pregnant fiancée, slammed Plaintiff TAUREAN JOSHUA into the marked police van, and threatened Plaintiff TAUREAN JOSHUA that the one or more Defendant POLICE OFFICERS would crack his jaw and break his nose.

6. Plaintiff TAUREAN JOSHUA was taken to the Forty-Sixth (46th) Precinct where one or more Defendant "John Doe" POLICE OFFICERS attempted to trip Plaintiff TAUREAN JOSHUA while walking him into the precinct, slammed Plaintiff TAUREAN JOSHUA into the precinct's front desk, subjected Plaintiff TAUREAN JOSHUA to an invasive and demeaning strip search, and held Plaintiff TAUREAN JOSHUA in custody for twenty-six (26) hours until his arraignment.  Plaintiff TAUREAN JOSHUA was charged with misdemeanors and violations based upon fabricated allegations of the Defendant POLICE OFFICERS. Following seven (7) appearances in the Bronx Supreme Court, Plaintiff TAUREAN JOSHUA received an Adjournment in Contemplation of Dismissal with respect to all of the charges against him. Plaintiff TAUREAN JOSHUA brings this action in a quest for answers as to why he was punitively arrested without probable cause, brutally beaten, detained at length, and subjected to prosecution in the absence of criminal conduct.

## JURISDICTION

7. This action is brought pursuant to 42 U.S.C.§§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

8. Plaintiff TAUREAN JOSHUA further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## VENUE

9. Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because Defendant CITY OF NEW YORK maintains its primary and relevant place(s) of business in this district.

## JURY DEMAND

10. Plaintiff TAUREAN JOSHUA respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

11. At all times pertinent to this complaint, Plaintiff TAUREAN JOSHUA was a resident of the City of Staten Island, State of New York, and the County of Richmond.

12. Plaintiff TAUREAN JOSHUA is now a resident of the City of Jersey City, State of New Jersey, and County of Hudson.

13. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

14. Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

15. That at all times hereinafter mentioned, the Defendant Police Officers "JOHN DOES 1-9" (collectively "Defendant POLICE OFFICERS" or individually "Defendant POLICE OFFICER") and the Defendant Police Officers BERGENLEAH, DONATO, DONNELLY, and BRACCONERI were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

16. The identities of the Defendant "John Does" POLICE OFFICERS at issue here are unknown to Plaintiff TAUREAN JOSHUA at this time.

17. Plaintiff TAUREAN JOSHUA will amend this complaint to name the Defendant POLICE OFFICERS as their identities become available to Plaintiff TAUREAN JOSHUA.

18. That at all times hereinafter mentioned the Defendant "John Doe" POLICE OFFICERS were acting under color of state law and/or in compliance with the official

rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

19. Each and all of the acts of the Defendant "John Doe" POLICE OFFICERS alleged herein were done by said defendants while acting within the scope of their employment by Defendant THE CITY OF NEW YORK.

20. Each and all of the acts of the Defendant "John Doe" POLICE OFFICERS alleged herein were done by said defendants while acting in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## FACTS COMMON TO ALL CLAIMS

21. Plaintiff TAUREAN JOSHUA is a twenty-five (25) year-old male who resided in Staten Island, New York at the time of the incident giving rise to this action.

22. Plaintiff TAUREAN JOSHUA is engaged to the mother of his sole child.

23. At the time of the incident giving rise to this action, TAUREAN JOSHUA'S fiancée was pregnant with their child.

24. Both TAUREAN JOSHUA and his fiancée are African-Americans who present as black.

25. Prior to the incident giving rise to this action, Plaintiff TAUREAN JOSHUA had no adult criminal record of any kind.

26. The events herein described began at or around 8:00 PM on March 26, 2011 in the Bronx, New York.

27. On the evening of March 26, 2011, Plaintiff TAUREAN JOSHUA and his pregnant fiancée had attended a small gathering of old high school friends at the home of a friend who resided near Cameron Place and Morris Avenue in the Bronx, New York.

28. At the time of the incident giving rise to this action, Plaintiff TAUREAN JOSHUA and his pregnant fiancée had just left the home of their friend residing near Cameron Place and Morris Avenue in the Bronx, New York.

29. After leaving their friend's house, Plaintiff TAUREAN JOSHUA and his pregnant fiancée entered their legally parked car on the corner of Cameron Place and Morris Avenue in the Bronx, New York.

30. Plaintiff TAUREAN JOSHUA and his pregnant fiancée had parked in a legal parking spot earlier that day.

31. Upon entering their legally parked car, Plaintiff TAUREAN JOSHUA started the ignition.

32. After starting the car, Plaintiff TAUREAN JOSHUA and his pregnant fiancée remained parked for a few minutes, waiting for the car to warm up.

33. On the evening of March 26, 2011, it was approximately thirty-five (35°) degrees in the Bronx, New York.

34. On evening of March 26, 2011, it was a cold night in the Bronx, New York.

35. Upon information and belief, Plaintiff TAUREAN JOSHUA and his pregnant fiancée perceived the evening of March 26, 2011 to be a cold night.

36. Upon information and belief, Plaintiff TAUREAN JOSHUA and his pregnant fiancée were cold as they sat in their legally parked car.

37. On information and belief, it is not suspicious behavior for persons to turn on a car, sit in that car and to remain parked for a few minutes on a cold night as they wait for their car to warm up.

38. It was not suspicious for Plaintiff TAUREAN JOSHUA and his pregnant fiancée to remain parked for a few minutes as they waited for their car to warm up.

39. Nevertheless, as Plaintiff TAUREAN JOSHUA and his pregnant fiancée waited for the car to warm up, a marked police van pulled up next to them.

40. While seated in the car, Plaintiff TAUREAN JOSHUA and his pregnant fiancée were not exhibiting any suspicious behavior or engaging in any illegal acts.

41. Though Plaintiff TAUREAN JOSHUA and his pregnant fiancée were not exhibiting any suspicious behavior or engaging in any illegal acts, a Defendant "John Doe" POLICE OFFICER in the marked police van rolled down his window.

42. Though Plaintiff TAUREAN JOSHUA and his pregnant fiancée were not exhibiting any suspicious behavior or engaging in any illegal acts, a Defendant "John Doe" POLICE OFFICER in the marked police van inquired as to whether Plaintiff TAUREAN JOSHUA and his pregnant fiancée were coming or going.

43. In response to the Defendant "John Doe" POLICE OFFICER'S inquiry, Plaintiff TAUREAN JOSHUA indicated that he and his pregnant fiancée were in the process of leaving the area.

44. Though Plaintiff TAUREAN JOSHUA and his pregnant fiancée were not exhibiting any suspicious behavior or engaging in any illegal acts, Defendant "John Doe" POLICE OFFICER in the marked police van then inquired as to where Plaintiff TAUREAN JOSHUA and his pregnant fiancée were leaving from.

45. In response to the Defendant "John Doe" POLICE OFFICER'S inquiry, Plaintiff TAUREAN JOSHUA indicated that he and his pregnant fiancée were leaving a family gathering.

46. Though Plaintiff TAUREAN JOSHUA and his pregnant fiancée were not exhibiting any suspicious behavior or engaging in any illegal acts, Defendant "John Doe" POLICE OFFICER in the marked police van then inquired as to where Plaintiff TAUREAN JOSHUA and his pregnant fiancée were heading.

47. In response to the Defendant "John Doe" POLICE OFFICER'S inquiry, Plaintiff TAUREAN JOSHUA indicated that he and his pregnant fiancée were going home.

48. Though Plaintiff TAUREAN JOSHUA and his pregnant fiancée were not exhibiting any suspicious behavior or engaging in any illegal acts, the Defendant "John Doe" POLICE OFFICER in the marked police van then pressed further, inquiring as to where Plaintiff TAUREAN JOSHUA and his pregnant fiancée lived.

49. Feeling he was being subjected to an unreasonable interrogation, Plaintiff TAUREAN JOSHUA inquired as to why the Defendant "John Doe" POLICE OFFICER was asking so many questions.

50. In response to Plaintiff TAUREAN JOSHUA'S inquiry, another Defendant "John Doe" POLICE OFFICER menacingly stated in sum and substance, "that's it."

51. At this point, one or more Defendant POLICE OFFICERS DONATO, DONNELLY, and BRACCONERI exited the vehicle in an aggressive and angry manner.

52. At this point, one or more Defendant POLICE OFFICERS DONATO, DONNELLY, and BRACCONERI exited the vehicle in what Plaintiff TAUREAN JOSHUA understood to be an aggressive and angry manner.

53. Plaintiff TAUREAN JOSHUA was alarmed at one or more of the Defendant POLICE OFFICERS' DONATO'S, DONNELLY'S, and BRACCONERI'S conduct.

54. Defendant POLICE OFFICER DONATO opened Plaintiff TAUREAN JOSHUA'S driver side door.

55. Plaintiff TAUREAN JOSHUA turned to face Defendant POLICE OFFICER DONATO.

56. With the driver side door open, Defendant POLICE OFFICER DONATO stated in sum and substance "keep your hands up, keep your hands up. You shouldn't have said anything, now you're in more trouble."

57. Defendant POLICE OFFICER DONATO then grabbed Plaintiff TAUREAN JOSHUA'S arm.

58. While clenching Plaintiff TAUREAN JOSHUA'S arm, Defendant POLICE OFFICER DONATO pulled Plaintiff TAUREAN JOSHUA out of the car.

59. After pulling Plaintiff TAUREAN JOSHUA out of the car, Defendant POLICE OFFICER DONATO then slammed Plaintiff TAUREAN JOSHUA against the side of the car.

60. Plaintiff TAUREAN JOSHUA suffered pain and injuries as a result of being slammed into the side of his car by Defendant POLICE OFFICER DONATO.

61. Defendant POLICE OFFICER DONATO then attempted to push Plaintiff TAUREAN JOSHUA face first against a jagged tree.

62. Fearing injury, Plaintiff TAUREAN JOSHUA attempted to protect himself by raising his arms up to brace himself against the jagged tree.

63. At this point, one or more Defendant POLICE OFFICERS held Plaintiff TAUREAN JOSHUA'S arms back.

64. With Plaintiff TAUREAN JOSHUA'S arms held back, one or more Defendant POLICE OFFICERS proceeded to forcefully move Plaintiff TAUREAN JOSHUA from the jagged tree to a brick or concrete wall approximately seven (7) feet away.

65. With Plaintiff TAUREAN JOSHUA'S arms held back, one or more Defendant POLICE OFFICERS slammed Plaintiff TAUREAN JOSHUA into the nearby brick or concrete wall.

66. Plaintiff TAUREAN JOSHUA suffered pain and injuries as a result of being slammed into a brick or concrete wall by one or more Defendant POLICE OFFICERS.

67. On information and belief, one or more Defendant POLICE OFFICERS knew or should have known at that time that excessive force was being employed against Plaintiff TAUREAN JOSHUA by one or more Defendant POLICE OFFICERS.

68. On information and belief, no Defendant POLICE OFFICERS intervened to prevent excessive force from being employed against Plaintiff TAUREAN JOSHUA by one or more of the Defendant POLICE OFFICERS, despite having had a realistic opportunity to do so.

69. One or more Defendant POLICE OFFICERS then tackled Plaintiff TAUREAN JOSHUA onto the pavement.

70. Plaintiff TAUREAN JOSHUA suffered pain and injuries as a result of being tackled by one or more Defendant POLICE OFFICERS.

71. One or more Defendant POLICE OFFICERS then pushed Plaintiff TAUREAN JOSHUA'S face into the pavement.

72. Plaintiff TAUREAN JOSHUA suffered pain and injuries as a result of having his face pushed into the pavement by one or more Defendant POLICE OFFICERS.

73. On information and belief, one or more Defendant POLICE OFFICERS knew or should have known at that time that excessive force was being employed against Plaintiff TAUREAN JOSHUA by one or more Defendant POLICE OFFICERS.

74. On information and belief, no Defendant POLICE OFFICERS intervened to prevent excessive force from being employed against Plaintiff TAUREAN JOSHUA by one or more of the Defendant POLICE OFFICERS, despite having had a realistic opportunity to do so.

75. Plaintiff TAUREAN JOSHUA was tackled in a manner that caused his right arm to be caught beneath his body.

76. Plaintiff TAUREAN JOSHUA did not attempt to get up or otherwise resist the one or more Defendant POLICE OFFICERS who had tackled him.

77. Plaintiff TAUREAN JOSHUA'S left arm was immediately restrained by one or more Defendant POLICE OFFICERS.

78. Plaintiff TAUREAN JOSHUA did not resist police efforts to restrain his arms.

79. Plaintiff TAUREAN JOSHUA was placed in handcuffs by one or more Defendant POLICE OFFICERS.

80. Plaintiff TAUREAN JOSHUA did not resist police efforts to place him in handcuffs.

81. Plaintiff TAUREAN JOSHUA'S hand circulation was cut-off due to the excessive tightening of his handcuffs.

82. Plaintiff TAUREAN JOSHUA could not feel his thumb due to a loss of hand circulation caused by the excessive tightening of his handcuffs.

83. On information and belief, one or more Defendant POLICE OFFICERS knew or should have known at that time that excessive force was being employed against Plaintiff TAUREAN JOSHUA by one or more Defendant POLICE OFFICERS.

84. On information and belief, no Defendant POLICE OFFICERS intervened to prevent excessive force from being employed against Plaintiff TAUREAN JOSHUA by one or more of the Defendant POLICE OFFICERS, despite having had a realistic opportunity to do so.

85. With his hands secured by handcuffs, Plaintiff TAUREAN JOSHUA was then placed in leg-restraints by one or more Defendant POLICE OFFICERS DONATO, DONNELLY, and BRACCONERI.

86. Plaintiff TAUREAN JOSHUA did not resist police efforts to place him in leg-restraints.

87. In the course of restraining Plaintiff TAUREAN JOSHUA, or directly before or thereafter, one or more Defendant POLICE OFFICERS placed Plaintiff TAUREAN JOSHUA under arrest.

88. Plaintiff TAUREAN JOSHUA'S pregnant fiancée was scared and screaming for Plaintiff TAUREAN JOSHUA.

89. Defendant POLICE OFFICER DONATO told Plaintiff TAUREAN JOSHUA'S pregnant fiancée in sum and substance, "say another word and I'm gonna put a bullet in you."

90. Hearing his pregnant fiancée screaming for him, Plaintiff TAUREAN JOSHUA attempted to check on his pregnant fiancée by looking in her direction.

91. Hearing his pregnant fiancée screaming for him, Plaintiff TAUREAN JOSHUA attempted to check on his pregnant fiancée by calling to her and asking if she was okay.

92. While Plaintiff TAUREAN JOSHUA was attempting to check on his pregnant fiancée, one or more Defendant POLICE OFFICERS prevented Plaintiff TAUREAN JOSHUA from checking on his pregnant fiancée by turning him in the opposite direction.

93. While Plaintiff TAUREAN JOSHUA was attempting to check on his pregnant fiancée, one or more Defendant POLICE OFFICERS prevented Plaintiff TAUREAN JOSHUA from checking on his pregnant fiancée by telling him to stop talking.

94. The actions of Defendant POLICE OFFICERS inhibiting Plaintiff TAUREAN JOSHUA from checking on his pregnant fiancée caused Plaintiff TAUREAN JOSHUA extreme terror, anguish, and fear for the safety of his pregnant fiancée and their unborn child.

95. At this point, one or more Defendant POLICE OFFICERS slammed Plaintiff TAUREAN JOSHUA into the marked police van.

96. Plaintiff TAUREAN JOSHUA suffered pain and injuries as a result of being slammed into the marked police van by one or more Defendant POLICE OFFICERS.

97. On information and belief, one or more Defendant POLICE OFFICERS knew or should have known at that time that excessive force was being employed against Plaintiff TAUREAN JOSHUA by one or more Defendant POLICE OFFICERS.

98. On information and belief, no Defendant POLICE OFFICERS intervened to prevent excessive force from being employed against Plaintiff TAUREAN JOSHUA by one or more of the Defendant POLICE OFFICERS, despite having had a realistic opportunity to do so.

99. One or more Defendant POLICE OFFICERS DONATO, DONNELLY, and BRACCONERI then threw Plaintiff TAUREAN JOSHUA into the back of the marked police van.

100.     At or around this time, Plaintiff TAUREAN JOSHUA inquired as to why the Defendant POLICE OFFICERS were treating him in this manner.

101.     In response to Plaintiff TAUREAN JOSHUA'S inquiry, a Defendant "John Doe" POLICE OFFICER stated in sum and substance, "shut up or I'll crack your jaw, you're lucky I don't break your nose."

102.     The statement by Defendant "John Doe" POLICE OFFICER that Plaintiff TAUREAN JOSHUA should "shut up or I'll crack your jaw, you're lucky I don't break your nose," caused Plaintiff TAUREAN JOSHUA extreme terror and anguish.

103.     Plaintiff TAUREAN JOSHUA suffered terror, humiliation, and mental anguish as a result of the intimidating and threatening statements, and as a result of the harsh treatment administered by one or more Defendant POLICE OFFICERS DONATO, DONNELLY, and BRACCONERI upon Plaintiff TAUREAN JOSHUA.

104.     Having been slammed into the police van, Plaintiff TAUREAN JOSHUA stated that he had never been arrested before, and again inquired as to why one or more Defendant POLICE OFFICERS DONATO, DONNELLY, and BRACCONERI were treating him in this manner.

105.     In response to Plaintiff TAUREAN JOSHUA'S inquiry, a Defendant "John Doe" POLICE OFFICER stated in sum and substance, "you're going to Riker's, you messed with the wrong gang mother fucker."

106.     The statement by the Defendant "John Doe" POLICE OFFICER that Plaintiff TAUREAN JOSHUA was "going to Riker's, you messed with the wrong gang mother fucker," caused Plaintiff TAUREAN JOSHUA extreme terror and anguish.

107.    Plaintiff TAUREAN JOSHUA suffered terror, humiliation, and mental anguish as a result of the intimidating and threatening statements, and as a result of the harsh treatment administered by one or more Defendant POLICE OFFICERS.

108.    At this point, one or more Defendant POLICE OFFICERS removed Plaintiff TAUREAN JOSHUA'S pregnant fiancée from Plaintiff TAUREAN JOSHUA'S car.

109.    One or more of the Defendant POLICE OFFICERS demanded identification from Plaintiff TAUREAN JOSHUA's pregnant fiancée.

110.    With Plaintiff TAUREAN JOSHUA'S car empty, one or more Defendant POLICE OFFICERS proceeded to search the vehicle.

111.    Watching the one or more Defendant POLICE OFFICERS search Plaintiff TAUREAN JOSHUA'S car, Plaintiff TAUREAN JOSHUA'S pregnant fiancée stated in sum and substance, "what are you looking for, we don't have anything."

112.    During the course of the search, Defendant "John Doe" POLICE OFFICER found a cookie crumb.

113.    Having found a cookie crumb, Defendant "John Doe" POLICE OFFICER stated in sum and substance, "must be some coke, anyone got a lighter?"

114.    Upon information and belief, the search of Plaintiff TAUREAN JOSHUA'S car by one or more Defendant POLICE OFFICERS revealed no narcotics, weapons, or contraband of any kind.

115.    After concluding their search, a Defendant "John Doe" POLICE OFFICER inquired as to whether Plaintiff TAUREAN JOSHUA'S pregnant fiancée could drive Plaintiff TAUREAN JOSHUA'S car home.

116.    In response to the Defendant "John Doe" POLICE OFFICER'S inquiry, Plaintiff TAUREAN JOSHUA'S pregnant fiancée indicated that she did not have a license.

117.    In response to Plaintiff TAUREAN JOSHUA'S pregnant fiancée's reply, the Defendant "John Doe" POLICE OFFICER threw Plaintiff TAUREAN JOSHUA'S hat at her.

118.    At this point, one or more Defendant POLICE OFFICERS seized Plaintiff TAUREAN JOSHUA'S car.

119.    Due to the seizure of Plaintiff TAUREAN JOSHUA'S car, Plaintiff TAUREAN JOSHUA'S pregnant fiancée was stranded on the street for two hours until her brother picked her up.

## POST-ARREST

120.    One or more Defendant POLICE OFFICERS transported Plaintiff TAUREAN JOSHUA to the Forty-Sixth (46th) Precinct in a marked police van.

121.     Upon arriving at the Forty-Sixth (46th) Precinct, a Defendant "John Doe" POLICE OFFICER attempted to trip Plaintiff TAUREAN JOSHUA while walking him into the precinct.

122.     Upon arriving at the Forty-Sixth (46th) Precinct, a Defendant "John Doe" POLICE OFFICER slammed Plaintiff TAUREAN JOSHUA into the front desk.

123.     Plaintiff TAUREAN JOSHUA suffered pain and injuries as a result of being slammed into the front desk by the Defendant "John Doe" POLICE OFFICER.

124.     Upon arriving at the Forty-Sixth (46th) Precinct, Plaintiff TAUREAN JOHUA was searched by one or more Defendant "John Doe" POLICE OFFICERS.

125.     The search of Plaintiff TAUREAN JOSHUA by one or more Defendant "John Doe" POLICE OFFICERS revealed no narcotics, weapons, or contraband of any kind.

126.     At or around this time, a Defendant "John Doe" POLICE OFFICER then inquired as to whether Plaintiff TAUREAN JOSHUA was in possession of any cocaine.

127.     At or around this time, a Defendant "John Doe" POLICE OFFICER inquired as to whether Plaintiff TAUREAN JOSHUA was in possession of any marijuana.

128.     On information and belief, this inquiring Defendant "John Doe" POLICE OFFICER was a bald senior officer, with a name like "Captain Rosen" or "Captain Logan."

129.     At no time during the incident giving rise to the present action was Plaintiff TAUREAN JOSHUA in possession of any narcotics.

130.     Upon completion of the search, one or more Defendant "John Doe" POLICE OFFICERS took Plaintiff TAUREAN JOSHUA into the bathroom.

131.     Once inside the bathroom, Defendant POLICE OFFICER BERGENLEAH instructed Plaintiff TAUREAN JOSHUA to disrobe.

132.     Once inside the bathroom, and with his pants pulled down, Defendant POLICE OFFICER BERGENLEAH instructed Plaintiff TAUREAN JOSHUA to squat and cough.

133.     One or more Defendant POLICE  OFFICERS performed a strip search on Plaintiff TAUREAN JOSHUA.

134.     Plaintiff TAUREAN JOSHUA suffered terror, humiliation, and mental anguish as a result of the demeaning and invasive search administered by the Defendants "John Doe" POLICE OFFICERS and POLICE OFFICER BERGENLEAH upon Plaintiff TAUREAN JOSHUA.

135.     The bathroom search of Plaintiff TAUREAN JOSHUA by one or more Defendant "John Doe" POLICE OFFICERS and POLICE OFFICER BERGENLEAH revealed no narcotics, weapons, or contraband of any kind.

136.     Upon completion of the strip search, one or more Defendant "John Doe" POLICE OFFICERS threw Plaintiff TAUREAN JOSHUA into a cell.

137.    Plaintiff TAUREAN JOSHUA was confined in a cell from approximately 9:30 PM until approximately 12:00 AM.

138.    At approximately 12:00 AM, one or more Defendant "John Doe" POLICE OFFICERS transported Plaintiff TAUREAN JOSHUA to central booking.

139.    Plaintiff TAUREAN JOSHUA arrived at central booking at approximately 1:00 AM.

140.    Plaintiff TAUREAN JOSHUA was held at central booking overnight.

141.    Due to the excessive force administered by some of the Defendant POLICE OFFICERS, Plaintiff TAUREAN JOSHUA was suffering from extreme pain.

142.    Due to his extreme pain, Plaintiff TAUREAN JOSHUA requested medical treatment from one or more Defendant "John Doe" POLICE OFFICERS.

143.    Upon Plaintiff TAUREAN JOSHUA'S request for medical care, Defendants "John Doe" POLICE OFFICERS stated in sum and substance that Plaintiff TAUREAN JOSHUA would remain in custody a lot longer if Plaintiff TAUREAN JOSHUA were to insist on seeing a doctor.

144.    Plaintiff TAUREAN JOSHUA nevertheless demanded medical treatment.

145.    Plaintiff TAUREAN JOSHUA arrived at the hospital at approximately 6:00 AM.

146.    Plaintiff TAUREAN JOSHUA returned from the hospital and arrived at central booking at approximately 9:00 AM.

147.    Plaintiff TAUREAN JOSHUA was held at central booking from approximately 9:00 AM until he saw a judge at approximately 10:00 PM that night.

148.    Plaintiff TAUREAN JOSHUA was released on his own recognizance at his March 27, 2011 arraignment.

149.    Plaintiff TAUREAN JOSHUA was in the custody of the New York City Police Department for approximately twenty-six (26) hours following his arrest at approximately 8:00 PM on March 26, 2011 in the Bronx, New York.

150.    Following his arrest, one or more Defendant POLICE OFFICERS falsely alleged that they observed Plaintiff TAUREN JOSHUA to be in possession of marijuana while he and his pregnant fiancée were sitting in their legally parked car prior to his arrest.

151.    Following his arrest, one or more Defendant POLICE OFFICERS falsely alleged that Plaintiff TAUREAN JOSHUA resisted his arrest.

152.    Following his arrest, one or more Defendant POLICE falsely alleged that Plaintiff TAUREAN JOSHUA had obstructed governmental administration.

153.    Due to the false allegations made by one or more Defendant POLICE OFFICERS, Plaintiff TAUREAN JOSHUA was charged with Criminal Possession of Marijuana in the fifth degree (a class B misdemeanor).

154.     Due to the false allegations made by one or more Defendant POLICE OFFICERS, Plaintiff TAUREAN JOSHUA was charged with Obstructing Governmental Administration in the second degree (a class A misdemeanor).

155.     Due to the false allegations made by one or more Defendant POLICE OFFICERS, Plaintiff TAUREAN JOSHUA was charged with Resisting Arrest (a class A misdemeanor).

156.     Due to the false allegations made by one or more Defendant POLICE OFFICERS, Plaintiff TAUREAN JOSHUA was charged with Unlawful Possession of Marijuana (a violation).

157.     Due to the false allegations made by one or more Defendant POLICE OFFICERS, Plaintiff TAUREAN JOSHUA was forced to appear on seven (7) separate occasions in the Bronx Supreme Court in order to defend himself against these four (4) charges.

158.     At Plaintiff TAUREAN JOSHUA'S May 11, 2012 appearance in Bronx Supreme Court, after a total of seven (7) separate appearances in the Bronx Supreme Court, Plaintiff TAUREAN JOSHUA received an Adjournment in Contemplation of Dismissal in resolution of all four (4) of the outstanding charges against him.

159.     At the time of the March 26, 2011 Bronx, New York incident, Plaintiff TAUREAN JOSHUA did not have any warrants outstanding for his arrest.

160.     At the time of the March 26, 2011 Bronx, New York incident, Plaintiff TAUREAN JOSHUA was not carrying a weapon of any sort.

161.     At the time of the March 26, 2011 Bronx, New York incident, Plaintiff TAUREAN JOSHUA was not carrying any illegal substances.

162.     At the time of the March 26, 2011 Bronx, New York incident, Plaintiff TAUREAN JOSHUA was not engaged in any illegal activity of any kind.

163.     The March 26, 2011 incident described herein and its aftermath constituted Plaintiff TAUREAN JOSHUA'S only adult interaction with the criminal justice system to date.

164.     Upon information and belief, "testilying," or testifying falsely with respect to narcotics charges to arrest people with no actual belief a crime is being committed, is a common practice among NYPD officers.

165.     This practice of false drug arrests is colloquially referred to as "flaking."

166.     Information supporting the existence of the above-referenced abuses of "testilying" and "flaking" arrests are pled in detail below, in the appendix hereto titled.

167.     The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been effected in whole or in part by the aforesaid practices of "testilying" and "flaking" because Plaintiff TAUREAN JOSHUA'S arrest was undertaken in the absence of probable cause to arrest.

168.    The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been effected in whole or in part by the aforesaid practices of "testilying" and "flaking" because it was undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff TAUREAN JOSHUA'S arrest falsely averred that Plaintiff TAUREN JOSHUA was in possession of marijuana when no narcotics of any kind were recovered from Plaintiff TAUREAN JOSHUA.

169.    The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been effected in whole or in part by the aforesaid practices of "testilying" and "flaking" because the Defendant POLICE OFFICERS arrested and initiated criminal proceedings against Plaintiff TAUREAN JOSHUA after it was already established that Plaintiff TAUREAN JOSHUA was not carrying any weapons or illegal substances, did not have any outstanding warrants against him, and was not engaged in illegal conduct of any kind just before the time of his arrest, but after Plaintiff TAUREAN JOSHUA had been seized and assaulted by the Defendant POLICE OFFICERS.

170.    Upon information and belief, it is common practice among NYPD officers to arrest people even in the absence of actual belief a crime is being committed.

171.    On information and belief, it is common practice among NYPD officers to arrest people for personal vindication following instances of perceived "contempt of cop," even in the absence of actual belief a crime is being committed.

172.    On information and belief, it is common practice among NYPD officers to arrest people to meet quantitative performance goals, or arrest quotas, even in the absence of actual belief a crime is being committed.

173.    On information and belief, it is common practice among NYPD officers to arrest people on "cover charges" following police employment of excessive force, to justify said use of force, even in the absence of actual belief a crime is being committed.

174.    Information supporting the existence of the above-referenced abuses of "contempt of cop" charges, "cover charge" charges, and "arrest quotas" are pled in detail below, in the appendix hereto titled ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS, which is incorporated by reference herein.

175.    Upon information and belief, the "contempt of cop" and "cover charge" charges levied most regularly by New York City Police Officers are disorderly conduct, resisting arrest, and obstruction of governmental administration.

176.    Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration are relatively easy for police to levy in the absence of actual probable cause because they may arise out of nearly any police-civilian interactions.

177.    Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration are relatively easy for police to levy in the absence of actual probable cause because they can be levied solely upon the allegations of the arresting officer(s) without reference to physical evidence or witness observation of criminal acts.

178.     Upon information and belief, the charges proffered against Plaintiff TAUREAN JOSHUA were "cover-charges" brought in order to justify the illegal "Contempt of Cop" arrest made by the Defendant POLICE OFFICERS.

179.     Upon information and belief, the charges proffered against Plaintiff TAUREAN JOSHUA were "cover-charges" brought in order to justify the illegal use of excessive force by the Defendant POLICE OFFICERS against Plaintiff TAUREAN JOSHUA.

180.     Upon information and belief, the charges proffered against Plaintiff TAUREAN JOSHUA were "cover-charges" brought in order to justify the illegal "flaking" arrest made by the Defendant POLICE OFFICERS.

181.     The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because Plaintiff TAUREAN JOSHUA'S arrest was undertaken in the absence of probable cause to arrest.

182.     The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because they were undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff TAUREAN JOSHUA'S arrest made the determination to arrest Plaintiff TAUREAN JOSHUA before determining why Plaintiff TAUREAN JOSHUA should be arrested.

183.     The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests, because the Defendant POLICE OFFICERS arrested and initiated criminal proceedings against Plaintiff TAUREAN JOSHUA after it was already established that Plaintiff TAUREAN JOSHUA was not carrying any weapons or illegal substances, did not have any outstanding warrants against him, and was not engaged in illegal conduct of any kind just before the time of his arrest, but after Plaintiff TAUREAN JOSHUA had been seized and assaulted by the Defendant POLICE OFFICERS.

184.     Upon information and belief, the arrest of Plaintiff TAUREAN JOSHUA was motivated wholly by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK.

185.     Upon information and belief, the arrest of Plaintiff TAUREAN JOSHUA was motivated in part by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK.

186.     Upon information and belief, the arrest of Plaintiff TAUREAN JOSHUA was motivated wholly by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK'S police department.

187.     Upon information and belief, the arrest of Plaintiff TAUREAN JOSHUA was motivated in part by the Defendant Police Officers' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK'S police department.

188.     The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in the absence of probable cause to arrest.

189.     The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff TAUREAN JOSHUA'S arrest made the determination to arrest Plaintiff TAUREAN JOSHUA before determining why Plaintiff TAUREAN JOSHUA should be arrested.

190.     The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff TAUREAN JOSHUA'S arrest falsely averred to Plaintiff TAUREAN JOSHUA'S possession of marijuana when no narcotics of any kind were recovered from Plaintiff TAUREAN JOSHUA.

191.     The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because the Defendant POLICE OFFICERS arrested and initiated criminal proceedings against Plaintiff TAUREAN JOSHUA after it was already established that Plaintiff TAUREAN JOSHUA was not carrying any weapons or illegal substances, did not have any outstanding warrants against him, was not engaged in illegal conduct of any kind just before the time of his arrest, but after Plaintiff TAUREAN JOSHUA had been seized and assaulted by the Defendant POLICE OFFICERS.

192.     As a result of the above constitutionally impermissible conduct, Plaintiff TAUREAN JOSHUA was caused to suffer, *inter alia*, personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to his reputation and standing within his community.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

193.    Plaintiff TAUREAN JOSHUA repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

194.    All of the aforementioned acts of the Defendant CITY, Defendant "John Doe" POLICE OFFICERS, and Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI, their agents, servants and employees, were carried out under the color of state law.

195.    All of the aforementioned acts deprived Plaintiff TAUREAN JOAHUA of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

196.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

197.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

198.    The Defendant "John Doe" POLICE OFFICERS, one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI, and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

199.    Further information regarding the existence of the aforesaid constitutionally-violative customs, policies and practices of Defendant CITY OF NEW YORK and its police officers, as well as of Defendant CITY OF NEW YORK'S knowledge of same and Defendant CITY OF NEW YORK'S failures to address same are set forth in the appendix to this complaint.

200.    As a result of the above constitutionally impermissible conduct, Plaintiff TAUREAN JOSHUA was caused to suffer, *inter alia*, personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to his reputation and standing within his community.

201.    As a result of Defendants' impermissible conduct, Plaintiff TAUREAN JOSHUA demands judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

202.    Plaintiff TAUREAN JOSHUA repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

203.    As a result of the aforesaid conduct by Defendants, Plaintiff TAUREAN JOSHUA was subjected to an illegal, improper and false arrest by the Defendants "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI, and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

204.    As a result of the above constitutionally impermissible conduct, Plaintiff TAUREAN JOSHUA was caused to suffer, *inter alia*, personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to his reputation and standing within his community.

205.    As a result of Defendants' impermissible conduct, Plaintiff TAUREAN JOSHUA demands judgment against Defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

206.    Plaintiff TAUREAN JOSHUA repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

207.    Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI assaulted Plaintiff TAUREAN JOSHUA in the absence of need for such action and force.

208.    Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI subjected Plaintiff TAUREAN JOSHUA to several physically aggressive maneuvers without Defendants identifying a requisite need for such action and force.

209.    On orders of one or more senior Defendant "John Doe" POLICE OFFICERS, police kept Plaintiff TAUREAN JOSHUA in custody overnight.

210.    The level of force employed by Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI against Plaintiff TAUREAN JOSHUA was objectively unreasonable.

211.    The force employed by Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI against Plaintiff TAUREAN JOSHUA did not advance any proper government objective.

212.    As a result of the aforementioned conduct of defendants, Plaintiff TAUREAN JOSHUA was subjected to excessive force and sustained physical injuries.

213.    As a result of the above constitutionally impermissible conduct, Plaintiff TAUREAN JOSHUA was caused to suffer, *inter alia*, personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to his reputation and standing within his community.

214.    As a result of Defendants' impermissible conduct, Plaintiff TAUREAN JOSHUA demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

215.    Plaintiff TAUREAN JOSHUA repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

216.    The Defendant "John Doe" POLICE OFFICERS, one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI, and the Defendant CITY OF NEW YORK had an affirmative duty to intervene on Plaintiff TAUREAN JOSHUA'S behalf to prevent the above-referred violations of their constitutional rights.

217.    The individual Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI failed to intervene on Plaintiff TAUREAN JOSHUA'S behalf to prevent the violation of his constitutional rights despite having had realistic opportunities to do so.

218.    The individual Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI failed to intervene on Plaintiff TAUREAN JOSHUA'S behalf to prevent the violation of his constitutional rights, despite having substantially contributed to the

circumstances within which Plaintiff TAUREAN JOSHUA'S rights were violated by their affirmative conduct.

219.     As a result of the aforementioned conduct of the individual defendants, Plaintiff TAUREAN JOSHUA'S constitutional rights were violated.

220.     As a result of the above constitutionally impermissible conduct, Plaintiff TAUREAN JOSHUA was caused to suffer, *inter alia*, personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to his reputation and standing within his community.

221.     As a result of Defendants' impermissible conduct, Plaintiff TAUREAN JOSHUA demands judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION
## UNDER 42 U.S.C. § 1983

222.     Plaintiff TAUREAN JOSHUA repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

223.     At or around the time that Plaintiff came into contact with the Defendant POLICE OFFICERS, Plaintiff TAUREAN JOSHUA engaged in protected speech or conduct, including but not limited to asking questions and protesting the manner in which he was being treated by the Defendant POLICE OFFICERS.

224.     Defendant POLICE OFFICERS took adverse action against Plaintiff TAUREAN JOSHUA.

225.     Defendant POLICE OFFICERS took adverse actions against Plaintiff TAUREAN JOSHUA by using wrongful and unjustified force upon Plaintiff.

226.     Defendant POLICE OFFICERS took adverse action against Plaintiff TAUREAN JOSHUA by unlawfully arresting him without probable cause.

227.     Defendant POLICE OFFICERS took adverse action against Plaintiff TAUREAN JOSHUA by falsely accusing him of crimes and violations.

228.     Defendant POLICE OFFICERS took adverse action against Plaintiff TAUREAN JOSHUA by taking Plaintiff into Police custody and detaining him against her will.

229.    Upon information and belief, there was a causal connection between the protected speech and conduct engaged in by Plaintiff TAUREAN JOSHUA and the adverse actions taken by the Defendant POLICE OFFICERS.

230.    The causal connection between the protected speech and conduct engaged in by Plaintiff TAUREAN JOSHUA and the adverse actions taken against Plaintiff by Defendant POLICE OFFICERS was demonstrated by, among other things, the fact that the Defendant POLICE OFFICERS used excessive force against Plaintiff TAUREAN JOSHUA in the absence of justification.

231.    The causal connection between the protected speech and conduct engaged in by Plaintiff TAUREAN JOSHUA and the adverse actions taken against Plaintiff by Defendant POLICE OFFICERS was demonstrated by, among other things, the absence of probable cause justifying Plaintiff TAUREAN JOSHUAS' arrest.

232.    The Plaintiff was falsely accused of crimes and violations and was taken into Police custody and detained against his will.

233.    Following his arrest, Plaintiff TAUREAN JOSHUA was subject to prosecution.

234.    The above-described charges were a pretext intended to justify the Plaintiff's illegal arrest.

235.    The actions of the Defendant POLICE OFFICERS heretofore described, constituted unlawful detention, imprisonment, assault and battery and were designed to and did cause bodily harm, pain and suffering both in violation of the Plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the constitution of the State of New York and in direct retaliation for the Plaintiff's exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

236.    That the conduct and actions of Defendants POLICE OFFICERS acting under color of State law, in assaulting, detaining and imprisoning the Plaintiff were done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification, and were designed to and did cause bodily harm, pain and suffering both in violation of the Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983, the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiff's exercise of his civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

237.    The Defendant POLICE OFFICERS deprived the Plaintiff of his liberty in violation of both his civil and constitutional rights, as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

238.    Defendants' actions were undertaken under color of law and would not have existed but for Defendants using their official power.

239.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff TAUREAN JOSHUA.

240.    Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff TAUREAN JOSHUA'S constitutional rights.

241.    All of the foregoing acts by Defendants deprived Plaintiff TAUREAN JOSHUA of federally protected rights, including, but not limited to, the right:

A. Not to be deprived liberty without due process of law;
B. To be free from seizure and arrest not based upon probable cause;
C. To free expression; and
D. To receive equal protection under the law.

242.    As a result of the above constitutionally impermissible conduct, Plaintiff TAUREAN JOSHUA was caused to suffer, *inter alia*, personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to his reputation and standing within his community.

243.    As a result of Defendants' impermissible conduct, Plaintiff TAUREAN JOSHUA demands judgment against Defendants in a sum of money to be determined at trial.


### SIXTH CLAIM FOR RELIEF
### MUNICIPAL LIABILITY UNDER *MONELL*

244.    Plaintiff TAUREAN JOSHUA repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

245.    Plaintiff also incorporates herein by reference the contents of the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

246.    Defendants used excessive force on Plaintiff TAUREAN JOSHUA in the absence of any evidence of criminal wrongdoing or other justification for the use of such force, notwithstanding their knowledge that said uses of force were unreasonable, unjustified, and would jeopardize Plaintiff TAUREAN JOSHUA'S liberty, well-being, safety and constitutional rights.

247.    Defendants arrested and incarcerated Plaintiff TAUREAN JOSHUA in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff TAUREAN JOSHUA'S liberty, well-being, safety and constitutional rights.

248.    The acts complained of were carried out by the aforementioned individual Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI  in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

249.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

250.    The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

    a.  the continuing practice or custom of New York City Police Officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with civilians generally;
    b.  the continuing practice or custom of New York City Police Officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with minorities;
    c.  the continuing practice or custom of New York City Police Officers wrongfully arresting individuals for perceived "contempt of cop";
    d.  the continuing practice or custom of New York City Police Officers wrongfully arresting individuals based on falsified evidence of drug possession, or "flaking";
    e.  the continuing policy of quantitative enforcement goals, or arrest quotas, which cause New York City Police Officers to wrongfully arrest persons in the absence of probable cause in order to avoid negative career consequences for not meeting said arrest quotas;

f.  the continuing practice of failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in the excessive use of force or in warrantless or otherwise unconstitutional arrests or otherwise impermissible violations of individuals' constitutional rights, particularly with respect to officers who are repeatedly accused of such acts;

g.  the custom or practice of members of the New York City Police Department known as the "Blue Wall of Silence," wherein members of the New York City Police Department intentionally and willfully fail to cooperate with investigations into the misconduct or corrupt activities of their fellow officers, a practice which leads New York City Police Officers to regularly condone and cover up police abuse of power by telling false and incomplete stories.

251.    The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department evince deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff TAUREAN JOSHUA.

252.    As a result of the above constitutionally impermissible conduct, Plaintiff TAUREAN JOSHUA was caused to suffer, *inter alia*, personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss or property, damage to property, loss of wages, legal expenses, and damage to his reputation and standing within his community.

253.    As a result of Defendants' impermissible conduct, Plaintiff TAUREAN JOSHUA demands judgment against Defendants in a sum of money to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
## EQUAL PROTECTION UNDER 42 U.S.C. § 1983

254.    Plaintiff TAUREAN JOSHUA repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

255.    Plaintiff also incorporates herein by reference the contents of the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

256.    At all times described herein, Plaintiff TAUREAN JOSHUA was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

257.    Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS DONATO, DONNELLY, and BRACCONERI arrested and incarcerated Plaintiff TAUREAN JOSHUA in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

258.    The acts complained of were carried out by the aforementioned individual Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

259.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

260.    Plaintiff TAUREAN JOSHUA was taken into Police custody and detained against his will overnight.

261.    That the actions of Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI heretofore described, constituted unlawful detention, imprisonment, assault and battery and malicious prosecution and were designed to and did cause specific bodily harm, pain and suffering both in violation of Plaintiff TAUREAN JOSHUA'S Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for Plaintiff TAUREAN JOSHUA'S exercise of his civil and constitutional rights of free expressive association as guaranteed by the Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

262.    The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

263.    The particular arrest of Plaintiff TAUREAN JOSHUA is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals, because one or more Defendant POLICE OFFICERS DONATO, DONNELLY, and BRACCONERI informed Plaintiff  that he was being arrested after it was already established that Plaintiff TAUREAN JOSHUA was not carrying any weapons or illegal substances, did not have any outstanding warrants against him, and was not engaged in illegal conduct of any kind just before the time of his arrest.

264.     The Defendant "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI, through their actions, carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

265.     As a result of the aforementioned conduct, the Defendants "John Doe" POLICE OFFICERS and one or more Defendant POLICE OFFICERS BERGENLEAH, DONATO, DONNELLY, and BRACCONERI have violated Plaintiff TAUREAN JOSHUA'S constitutional rights to equal protection, and Plaintiff TAUREAN JOSHUA is entitled to seek redress under 42 U.S.C. §1983, and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

266.     The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiff TAUREAN JOSHUA as alleged herein.

267.     The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiff TAUREAN JOSHUA as alleged herein.

268.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, Plaintiff TAUREAN JOSHUA was subjected to excessive force, false arrest, and excessive and unnecessary detention.

269.     As a result of the above constitutionally impermissible conduct, Plaintiff TAUREAN JOSHUA was caused to suffer, *inter alia*, personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to his reputation and standing within his community.

270.     As a result of the foregoing, Plaintiff TAUREAN JOSHUA demands judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

     I.  Invoke pendent party and pendent claim jurisdiction.

     II. Award appropriate compensatory and punitive damages.

     III. Award appropriate declaratory and injunctive relief.

     IV. Empanel a jury.

     V.  Award attorney's fees and costs.

     VI. Award such other and further relief as the Court deems to be in the interest of justice.

DATED:  New York, New York
         July 16, 2012

Respectfully submitted,

Wylie Stecklow
STECKLOW/COHEN & THOMPSON
10 SPRING ST, SUITE 1
NEW YORK, NY 10012
[212] 566-8000
[212] 202-4952/FAX
ATTORNEYS FOR PLAINTIFF